Good morning, Your Honor. Brad Whipple, may it please the court. I'm here on behalf of John Abrams, and I'd like to reserve five minutes for rebuttal. Your Honor, my first claim this morning is Federal Rules of Evidence 413. It's our position that the trial court violated 413 in two material ways. The first, as this court is aware, is there needs to be a preponderance test, whereby the trial court makes a determination if the character evidence that comes before the jury is, in fact, viable, whether, in fact, the jury can find by a preponderance of evidence that it exists. Historically, the trial courts have an evidentiary hearing outside the presence of the court. Unfortunately, in this particular case, the court looked You say historically. I actually don't. On what basis do you say that? I thought that was a highly unusual proposal that the This was the one where the judge switched right before trial, right? Yes, exactly. Whoever the earlier judge was, the proposal that he offered struck me as, I'm going to defer to my colleague here, but I was not thinking that that was a normal process at all. Well, how else do you determine the veracity and the credibility of a particular witness? That's not what you're supposed to do for this preliminary fact determination, right? It's just you're supposed to make a determination, and I don't see why you couldn't do it on the basis of FBI 302s, as to whether the substance of the testimony being proffered would fit within the rule, no? I think it goes more than that. I think it's a determination whether, in fact, the jury could find it by a preponderance of evidence if, in fact, it was valid, if, in fact, it actually existed. Well, I'm quite confident. I can't remember which Supreme Court case says this, but the district judge is most definitely not supposed to assess credibility of the witness and decide, hmm, do I think that person is credible? Okay, I guess I'll let them testify before the jury. That's definitely not what happens, right? Well, first of all, in order to bring it forth, it has to be understood. It has to be the preponderance test is there in order to make sure that the jury can accept it, that it passes that straight-faced test that exists, whether it's whether, in fact, those facts that are being brought forward, the character of evidence, actually exists. In this particular case, the first judge said, okay, we need an evidentiary hearing, because if the witnesses take a stand and deny that it exists, it's not going to pass that test. In other words, I need to have some validity that these facts actually occurred. There was no conviction. There was no testimony. There was simply a 302 from the FBI. How does one determine from an FBI 302 whether these facts actually existed? We don't know what the witness is going to testify to. This is hearsay from an FBI agent. And so our position is that the preponderance test can only take place when there was either a conviction or they had the opportunity to determine the credibility of the witnesses. And that's what the first judge in this particular case held, that there should be an evidentiary hearing. So we're unaware of any place where a FBI 302 can suffice for a preponderance of the evidence test. Normally, again, it's something that you can't do. Robertson So your thought is that what Congress or whoever, the rules enactors, they basically wanted the victim to be, you know, traumatized twice over. Let's have this preliminary sort of, we'll take the witness on voir dire outside the presence of the jury, make them go through all of the rigors of cross-examination, all of the stress and embarrassment that that brings. And then if that person seems credible to the judge, we'll just make them do it all over again in front of the jury? I can't imagine that that's the system that we're supposed to endorse here. McCullough Well, otherwise, you've got to bring evidence forward with some credibility. There has to be some basis. I mean, are you telling me that a 302 from an FBI agent that is enough to suffice the credibility issue of whether it actually exists? Normally, there's a conviction, so you have evidence that in fact this act actually occurred. You have a conviction or you have the testimony of the actual witnesses or the people that were victims. You know, I can't speak to the victims, but I know on behalf of the defendant, character evidence is not the basis for convicting people. We want to convict people on the facts of the case. And when you bring enough character evidence in to say this person is horrible and bad, people start convicting them on who their character is versus the facts of the case. So I do believe that in fact there has to be some test before you bring forward these individuals. And again, I don't want to speak on behalf of victims, but out of the presence of the jury, under the confines of a judge, I don't see the victims being victimized a second time. In this particular case, it's even worse because the first judge made a determination, okay, my client, Mr. Abrams, we're going to have this evidentiary hearing, so you'll have some notice as to the character evidence that's actually going to come forward. And in the middle of trial, the judge, trial judge, made a determination and switched and said, no, you know what, I have enough information from the 302, I'm going to let it come forward. I understand under Huddleston the court could have allowed the evidence to come forward in front of the jury and made the determination at the conclusion that, yeah, I saw I've seen this testimony and I find that it's credible and it passes a straight-faced test and it's allowed. Or had the person contradicted themselves on the stand, could have asked that testimony be stricken. But that's not what happened in this case. In this particular case, this district court judge erred by making that ruling prior to the testimony and based solely on the FBI 302 statements. So our position is that in fact was an error under Federal Rules of Evidence 413 and should demand reversal of that particular case. Just tell me, Huddleston is in fact the case I was thinking of, so how is your argument consistent with Huddleston in terms of the credibility determination? Because I thought Huddleston said exactly, that's the case I was thinking of. You do not make a credibility determination when you make one of these preliminary fact determinations. Well, my reading of Huddleston is that you can put the person on the stand like they did. That would be before you made the determination whether the preponderance of the evidence would go, whether the preponderance test has been met. And after that person testified, then you can make the determination that, yes, a preponderance test has been met. I'll allow the evidence to stand. Or if in case it doesn't stand, if it doesn't pass a preponderance test, then you could actually ask it to be stricken. Okay. But so you're saying in this case you fault the district court for doing what? This case, the court didn't either. In this case, the trial court made the determination prior to the testimony of the witnesses, the character witnesses, and based solely on the FBI 302. And our position is that an FBI 302 is not a basis. So then your view is that once the witnesses testified at trial, there was no motion to strike their testimony on the basis that it wasn't, it was lacking in credibility, right? That's true. So what's the complaint? I guess I don't understand. Well, in this particular case, it's twofold. The fact that the court should have ruled ahead of time, so my client would have had been prepared. And the second thing is that my client was expecting an evidentiary hearing. He was told by Judge Jones that he would get an evidentiary hearing. He would have an opportunity to cross-examine the character witnesses and at least have some idea of what kind of information is being brought forward. But you're saying, but tell me if I'm wrong, I hear you saying, well, he wasn't entitled to the sort of dry-run testimony outside the presence of the jury. He was entitled in the sense that the first judge gave an order and he relied upon it. He went into trial. Well, there was a different judge by the time it went to trial. And that judge is not bound by what the earlier judge said. And she said, no, we're not going to do it that way. And so if there were – if somehow the witnesses got on the stand and, you know, said something, I guess, I don't know what you're envisioning, that they looked too fidgety and the judge said, boy, you've testified consistently what you said in the FBI 302, but I just don't think any reasonable jury could find you credible, so therefore, I don't know, I'm supposed to strike the testimony? Sure. I mean, in this particular case, you had two ex-wives. They were obviously biased against the client, our defendant. It had been 20 years since they had any interaction with the client. In the 20 years since then, they'd never once made a report. They'd never once brought forth a picture. They never brought forth another witness that declared any of these character evidence that had occurred 20 years before. I think absolutely that, in fact – So no jury could believe them because they hadn't gone to the police? We're really going to reprise that whole line? Well, at the end of the day, the district court judge did not strike it. They could have, but my position is twofold. First of all, that, under the law that I see, the judge was supposed to make that determination and never did. The judge made it solely on the FBI 302, and I think that's inappropriate. Second of all is my client relied on the judge, the first judge, that said there was going to be an evidentiary hearing before we brought in this character evidence, you're going to have an opportunity to see what this testimony is and cross-examine it. So on those two points, I do believe the trial court erred with regard to Federal Rules of Evidence 413. The district court has an inherent responsibility, I think you might agree with me, whether it's spoken or not, to impose the requirements of Rule 403, which has to be more probative than it is prejudicial. And it appears to me that the judge did just that. Well, so that was my second claim, is not only did this trial court err in applying Federal Rules of Evidence 413, but they also erred in applying 403. And they didn't apply the late, excuse me, the LeMay factors appropriately. There are a number of factors that the court is required to apply under 403, and those have to do with similarity. Those have to do with timing. In interventions, and they're supposed to also take into consideration other factors that may be relevant. Those other factors that were raised by my client included if there was less prejudicial way of getting the information in, if the jury finder of fact was going to be distracted by these character evidence facts that occurred 20 years before, and the court did not even consider those particular issues. But more importantly, the court misapplied the, excuse me, the LeMay factors. Similarity. You have wives that existed two decades before that ended in divorce, and a lot of emotional issues that occurred 20 years ago. And then you have teenagers 20 years after the fact. I just don't see the similarities other than the fact that they're the same claim, that there's just too much similarity. The second thing is the timing issue. The court actually said 20 years actually suggests or encourages that this should be applied. It either encourages or is neutral. How can an issue 20 years ago be applicable to something that happened today with a different set of characters? So our position is, again, not only was 413 violated, but 403 was also violated because the factors were wrongly applied. And it was extraordinarily prejudicial. I don't know if you had an opportunity to read the transcript. All of these ex-wives came in and said exactly what you'd expect. I hate him. He was horrible. He treated me, he tried to control me with finances. He tried to control me physically. Had nothing to do with the allegations. Well, that's what I was going to ask you about in terms of similarity. I mean, you're right. The circumstances are quite distinct in some ways. But I thought there was a similar strain in terms of his attempt to control almost psychologically as well as physically the victims in each of the instances. Is that? I mean, every person is going to have a different opinion regarding that. Clearly, my position is the fact that they were two decades apart suggests that I just But you understand from the standpoint of just trying to assess probative value that your client's position, remind me if I'm not, I hope I'm not mischaracterizing it, was basically like this young lady made this entire thing up. None of this happened. That's correct. Right? So it does make it more likely that she's telling the truth when the kind of sort of psychological coercion or manipulation that he exhibited toward her, the ex-wives also suggest that something similar happened to them, albeit 20 years earlier. But boy, it's not, it doesn't seem that coincidental, right? When there's kind of a common, so that's what I think the similarity is. I agree with you that otherwise the objective circumstances are quite different. But how do you respond to that? Well, you know, at the end of the day, Your Honor, I think the fact of the matter is you had very biased witnesses who were going to say whatever they could to damage something that somebody that they divorced 20 years ago. But isn't that something you argue to the jury? You argue bias? Sure. Absolutely. But when it gets so prejudicial that they lose track of the facts of the case, then it becomes unfair. I mean, what does it have to do that he tried to control their finances? What does it have to do with the fact that they hated him to this day? What does the fact that when they, you know, last year when they heard a noise outside their window 20 years after the fact, they felt afraid of him? I mean, that's the type of evidence that they're bringing in in front of these finders of fact, and they lose all track of the facts of this case. I mean, what does it have to do that an ex-wife a year ago, having not seen this individual for 20 years, heard a voice outside in the dark and was worried that he was going to come attack her? That's the type of testimony that came in through these character witnesses. And it's just, in my opinion, unfair and extraordinarily biased and shouldn't have come in in the first place. What is the closest authority? You know, we give a pretty wide range of authority to the district court to determine whether the prejudice is going to be undue. What is the closest authority where we've said that that authority was used? Well, I think LeMay is there. There's some other cases that I cited. I mean, to a degree, it's a common sense issue. I mean, at the end of the day, that's why we have 12 jurors. But I just think it's extraordinarily prejudicial when you start talking about the fact that he controlled the finances, the fact that 20 years after the fact, I'm afraid that I'm going to be attacked. All that prejudicial information that came in from that. He was controlling and abusive to women 20 years ago. And that is somehow beyond the pale? Well, so here's the thing. Wouldn't most ex-wives have something horrible to say about their ex-husband? I mean, I don't know, but I'm just saying the fact that there was 20... But most victims of controlling and abusive behavior would have hard feelings about it. Well, the other side of that is if you had 20 years to complain, wouldn't you complain once? Or wouldn't you take one picture? Or bring in one other person that could cooperate it? I mean, at the end of the day... It's like a good jury argument. Well, and so it is. But the problem and the reason I'm before you is that I think when it gets so prejudicial and so extreme that it becomes unfair. And that's why I appreciate the opportunity to present it to you. And one thing I might add is this is an individual who represented himself. We have the prosecutors at the same time asking, how did it feel when you were raped? I mean, they're taking advantage of the fact that my client doesn't understand legal objections necessarily. Again, he took it upon himself. But they're coming in and saying, well, how did it feel when you were raped? How did it feel when you were traumatized? I mean, they're just bringing in all this prejudicial information that's so easy to lose track of what the issues are in this case. You know, counsel, your primary point with getting back, if we can, to your argument that this is 20 years ago and who knows what's happened in the meantime. But much of your argument would be precisely the same if one of these women had divorced or been divorced or had gotten divorced five years before. Two years before. You would still make the same argument, wouldn't you? She's prejudiced against him. She hates him. She's biased against him. All of these arguments that you're making now apply equally even if it was just a few years ago. So I'm not as impressed as you are with the time differential here where we're dealing with somebody's kind of course of conduct. And I understand that, but at the end of the day, is that course of conduct? I mean, here's the reason why they said they didn't report it is I was scared. I was scared. So I could say a month after the divorce, maybe that'd apply. Six months, maybe, but 20 years? Does that make sense to you, that after 20 years of being divorced, that you never reported it once? If somebody was deathly afraid of someone, it makes perfect sense to me. That's very true. Obviously, reasonable minds differ, but at the end of the day, in my opinion, it gets to the point where there's no longer a fair trial, that the jurors are concentrating on this person's character versus the facts of the case. Listen, your arguments, I grant you, I understand exactly where you're coming from, but it seems to me your complaint really is with 413 itself. And we've, I think the constitutionality of that is behind us. All of the things that you're talking about go to, should we even have this rule? But the judgment has been made that we should, and our Court has in a, you know, the companion rule, we've said it's all right. I'm not even arguing about the constitutionality. I'm simply saying it was wrongfully applied. The 413 was wrongfully applied. The Court told him, we're going to have an evidentiary hearing, you'll have the opportunity to cross-examine these witnesses, and in the 6th or 7th day of trial, all of a sudden they just came in with him never having the opportunity and the judge making a decision off of FBI 302. That's the 413. And then the 403 is the whole unbiased aspect of it. Your Honor, I only have two minutes. May I? Yeah, that's, of course. Thank you. Let's hear from the government. Good morning, Your Honor. Nancy Olson, appearing for the government. I was going to say, boy, you don't look like that. Very good. May it please the Court, I'm going to talk about the Rule 413 claim, and then anything else the Court wants to address. The Court was correct to zero in on the Supreme Court case, Huddleston. That's the one that talks about the threshold determination that needs to be made. So, the error that Mr. Abrams is raising is essentially, the District Court didn't make this credibility finding, but that's not what the District Court does. The District Court is supposed to say, could any reasonable juror hear this proffered evidence, and could any reasonable juror make a determination by a preponderance that this happened? Can I ask this question? Of course. Well, first of all, do you have a lot of experience in cases where these kinds of victim witnesses are brought in? Is it common, as your opponent says, for there to be this sort of, I think of it as voir dire, outside presence of the jury? I don't personally have a lot of experience in this type of sexual assault case, but what I will say is, just looking at the cases that we cited both to the District Court, there was sort of a compendium in our motion in Lemonet about what happens, do you need, does it have to be a conviction? Can it be in charge? Do you have to have a hearing? Does it not? I would say to some of the recent cases I've seen, you don't have to have a hearing. Of course, this is a matter in the District Court's discretion. If there's something that maybe doesn't add up to the Court, or they want to have a little more than what was proffered, that's absolutely up to the District Court. But in this case, I do want to correct the statement that was made that we're only talking about 302s. There was much more than 302s that were submitted. If you look at, it's ECF number 48, is the MIL that talks about trying to get this evidence in. It has a detailed chart comparing all the similarities of all the victims. And I'll also remind the Court that we're not talking about just two ex-wives, there were four total. So there were the two ex-wives that were the older in time, and then we also had a victim from Missouri that was about five years after the ex-wives, and then we had another victim from Salt Lake City that was only five years before the allegations in this case. And so the District Court's allowed to look at all of that, even if not all of it comes in at trial. The Court can look at that relevant to the factors of things like frequency and similarity. And so there was much more than just two 302s. That chart you mentioned that sketched out the similarities, I don't know what similarities you're talking about, because I don't know what was it based on, if not the 302s, in terms of what the forget about the other two who didn't testify, we're focused on the two who did testify. It was based on the 302s for the two who testified, and it was based on things like the police reports for the two that didn't make it to trial, because Put them aside. Just focusing on the two who did testify, because that's all that's before us. I looked at the 302s, and what struck me was that they are, I guess when maybe it was when I read the government's report, they were more detailed than they were. And I don't think, on the basis of what's in the 302s, the judge could make any determination about the similarities, because there's not enough detail. So I guess, I don't know if it just ultimately becomes harmless error, but I would not have thought that if all the judge was going to look at were the 302s, that any determination could be made that, oh yeah, what happened to the two ex-wives is so similar, or similar enough to what happened to the young lady in this case, that this evidence should come in. So I guess that's why I was curious when you said there was a lot more than the 302s. It doesn't sound like it for the two ex-wives. Well, I think if you go back and look at the chart, it's sort of laying it out for the court of why the relevant facts are similar. So there's a lot of facts we can point to, such as were they married or were these runaway teenagers that he picked up that are not similar, but this is talking about the similarity of the sexual assaults themselves. And so we're talking about someone who uses a very specific pattern, which I think you pointed out about the control, right? So he has the psychological control. That's not in the 302s, that's my point. None of that is in the 302s, in fact. It talks about it, I believe, in that motion, though, where it lays it out about... So where did the motion... It's a proffer from the government. Oh, I see, okay. So the motion is in the form of, we've interviewed these witnesses, Your Honor, and here's what we say that their testimony is going to look like? That's correct. So it's based on the 302s, which are attached, and also the police reports. But of course, the direct exam, if the court lets it in, is not just going to ask each detail of the 302. It's going to kind of ask a little background and then it's going to ask some things about the details of the sexual assault, right? Because that's where the similarities come in. And so this person really had this very brutal MO about how he sexually abused these women. And if you look at the similarities there, that's the part where we see the pattern. That's the part that's going to be the jury considering whether this is relevant to this case. And we're not talking about just some sort of rape where there's obviously lack of consent, some sort of force. We're talking about a very specific brutality pattern that he engages in when he does this. And I think it was talked about at trial, it was talked about in the motion. I can go into it and be more specific if the court would like. Well, counsel, to get back to Judge Watford's question, what you're saying is that in addition to the 302s, there was the, as an officer of the court, the prosecutor got up and said we've, our agents, we've talked to these other victims and this is what they said and these are the similarities and so on and so forth that the judge made the decision predicated on not just the 302s but also the proffer from the prosecutor. That's correct. And so if we can talk about the four victims for a moment, when this motion was originally made and the trial date was going to be much, much earlier, the hope was all four of them were going to come in. And the fourth one in particular, the most recent five years ago victim, was actually even more strikingly similar than the basic similarities of the others. And so when the district court was considering it by the time she ruled on this motion during the course of trial, after she had heard it in the context of evidence, after she had heard the female victim testify about how the defendant specifically made her do things he made his ex-wife do, and the court's now hearing this in context and finding it even more relevant based on the proffer and so she's allowed to, the district court's allowed to consider all of those even though now based on continuances and unavailability, they can't come in. But again, it's a proffer and it's a pattern and the court is just asking that basic threshold question. It's not, do I, if these witnesses were here would they be credible? It's, we have these police reports, we have these proffers, 302s, and if these statements were made to a jury, could a reasonable juror find by a preponderance that these things happened? And so that's what it was based on and the district court did comment about how she was considering all four of them, not just the two that were the two that were coming in to testify. There was also some discussion about evidence rule 403. Again, this is under evidence rule 413. It's a rule of inclusion. Congress specifically turned away from rule 404B, which is not to be used for propensity evidence. This one's allowed to be used for anything that's relevant and that includes propensity. And so when we're looking at 403, it's whether the probative value is substantially outweighed. It's not just a balancing test 50-50. It has to be substantially outweighed by unfair prejudice. And Mr. Abrams had raised some other proposed factors he would like the district court to consider. Those are some factors that originated from a 10th circuit case. And what was said there was if these are relevant, they could be considered. But, of course, any factor that is relevant could always be considered because it's a non-exhaustive test. But here the court didn't consider them. I think you can see from the transcript what was happening there. She was saying that these are not relevant. I'm sticking to the five factors from LeMay, the five factors that are the controlling law in this circuit. And she applied them and did a very detailed analysis of that. When we talk about the timing factor of the discussion, she said that the district court didn't say something to the effect of this way strongly in favor of admission. She just said, look, this doesn't exclude it and maybe it's just neutral. But one neutral factor is not going to tip substantially outweighing the relevancy of this information. And we can't say that this was an abuse of discretion because she barely found that this factor was neutral. With 404B, which is obviously a different rule, we generally are very skeptical of anything that's over 10 years old. Very skeptical. But it doesn't really apply directly to 413 because it's a broader rule. When Congress was enacting this rule, you can see how much they were trying to make it a rule of inclusion and they specifically did not include a time limit. So could we imagine some case where maybe it's 50 years old where a court might look at it and say, okay, we have to draw the line somewhere. This 50 years is too old. Maybe the witnesses have died or something like that. Sure, there could be an outer bound, but as a matter of a black and white rule, there is no specific time limit that someone could point to and say once we get to 15 years or 20 years and so on, that it's too old. Especially in a case like this where we have a pattern where it wasn't 20 years ago and then stopped. We have several examples that can be pointed to. Do you just want to briefly Did you have a question, Your Honor? I was going to change the subject. Do you have more on this? Just one brief. There was a comment made about some misconduct about the use of the word rape. I just want to point out when the prosecutor was questioning that the first witness, the first ex-wife, the question was asking about the quote sexually abusive behavior and then the witness responded and talked about rape. And so there can't be misconduct if we're using terms like sexually abusive. If the witness believes it's rape, wants to call it rape, and I think is commonly understood what he did to her was rape, I don't see how there's any misconduct there. So that's all I had on the 413. Okay. So could you address I guess the denial of the motion for a continuance and the lack of access to his materials in order to be able to prepare for trial. I guess I had some concern about how that played out and I was hoping you could clarify in terms of what the record shows. Of course. As I understand it, the main complaint he has is that, well, I was asking for more time and sure, maybe at some point you say enough is enough. We've got to get on with this. But the main problem was that every time they transported me, they basically confiscated all of my discovery materials and I had to just start from scratch every single time. And so yeah, if I had had that stuff with me the whole time maybe I would have had an adequate amount of time to prepare. But given that that kept happening, I was not able to get ready in the time frame. So maybe you can just address that point. Sure. So we know that he went pro se on November 9th. We know that he got transported and the materials were taken away, like you said. But we know starting in about mid-December things really started to change for him where his standby counsel is getting in the picture, delivering more copies, meeting with him. So he does make a lot of these complaints but I'm going to point you to the places in the record where the record contradicts what he's complaining about, about time and access. So he admitted in a declaration that he filed on February 2nd he received discovery and the means to this is at page 1897. So he admits January 15th, this is one month before trial. He also admits that he did in fact examine it. So we have standby counsel talking about spending 20 hours on discovery review with him. And as the record shows, this is not a document-intensive case. This is not a white-collar case. We're talking some witness interviews. Most of the discovery provided by the government was about 600 pages of Mr. Abrams' criminal history. He has a 30-year criminal history, so a lot of it was that. Of course, there was some materials that came from prior defense counsel. But again, when we're talking about 1,100 pages, part of the issue there was this iPod download. It's a Cellbrite report. It's meant to be looked at electronically. It's not meant to be printed out in a long PDF. And I understand the issue about the CD being confiscated. However, January 15th, a month before trial, he was transferred to the Washoe County Jail where he stayed for the rest of the month. CDs aren't contraband there. They gave him his own computer. He used the multipurpose room as his office. He had a USB device that he could move files around. He didn't need the printout of the Cellbrite, which was not, frankly, readable anyway. So a month before trial, he has electronic devices. He has access. As we get closer to trial, we have the court entering orders, such as giving him some more time to talk to witnesses on the phone. He had admitted that he'd already talked with his counsel with several witnesses, but there were a few more to go. So the court issues an order directing the jail, give him more time on the phone. This is the phone where you can't record calls. The court also entered, actually, Judge Jones, which was prior to this, he entered an order for the jail to give standby counsel as much time with the defendant as the defendant wanted. So we're not talking certain visitor hours or anything. He could go in there as much as he wanted, and that's why we know how much time they spent reviewing discovery. So the court, the district court did a really good job of making a record of this, of what kind of access he did have, especially in the jail the one month prior to trial. There was a Sergeant Palmer who came in and testified at trial. This is not in front of the jury. This was more for the purpose of making a record for this appeal, because of course, Mr. Abrams has filed 19 continuance motions, and so we know this is going to be an issue. So starting at page 1459 in the record, Sergeant Palmer talks about all these accommodations that were made for Mr. Abrams, and Mr. Abrams alone, he talks about how this has never been done in his experience 10 years at the jail, and they're really, the deputies are bending over backwards to help him. They're skipping lunches, they're delivering stuff to him. We know that standby counsel told the court in the late January status conference, he was ready to cross-examine, Mr. Abrams was ready to cross-examine his witnesses. He just needed a little more time to finish looking at some of the iPod stuff, and then if you look at the length, what you asked was, was it enough? So a little continuance was given. At the end of the day, was that enough? At the January 26 status conference, standby counsel, the court asked standby counsel, okay, you're going to have all these other issues, court calendar, victim rights, witness availability, and standby counsel said, okay, he's ready on these things, not on these things, we need a month, maybe a month and a half. Government opposed, government said, we want nothing, zero continuance, and so the court kind of cut it down the middle, and instead of giving a month, gave 21 days. This is an abusive discretion review. We cannot say that 21 days, as opposed to a month, is nine days less is an abusive discretion. And so I think if you look at those places in the records where Abrams is admitting he got everything, he's admitting he reviewed it, would he like more time? Of course. Would everybody like more time? Probably yes, but it's also contradicted by the fact that he talks about this being a straightforward case. He's been preparing for three and a half years, so if you really look at the facts of what happened, Your Honor, I think that the answer is he got enough time, and he admitted he reviewed and had everything, and if you look at how he did at trial, he had materials, he was able to say it is what it is, but this is not a case where he got up and really had no idea what to ask the witnesses or what to do in trial. And then lastly, the final thing I want to say about the continuances is even if the court were to think that more time should have been granted, the main problem that Mr. Abrams faces here is he can't show any prejudice. He really only talks about two kinds of prejudice. The first is his expert, O'Donohue. He never raised this in the district court. He never said, I need a continuance because if I don't get one, my expert won't be available. And if you look at what happened, his expert was available at the beginning of trial, and he essentially flaked out. The expert showed up for voir dire. The district court questioned him and his testimony was going to be limited, and then he was supposed to come in that Friday afternoon. There was a bit of a time difference. The court wanted him at 2.30. Standby counsel told him 4 o'clock. It was a Friday afternoon. He wasn't there. The judge let the jury go home and said, okay, we're going to have him, what, Monday or Tuesday? And they said, yeah, yeah, he'll be Tuesday morning. It's fine. Tuesday morning comes. He's not there. Okay, Tuesday afternoon. The court's saying, okay, whenever he's here, we're going to interrupt whoever's on the stand, take a break, put him on, we'll get him in. And then at the end of the day, the court, we're at the end of trial, and the court asks, where is he? And they say, well, he's not coming. What was he supposed to testify about? They originally wanted him to testify essentially about the victim's credibility. So he talks about interview tactics and if there's certain features of interviews, whether or not questions and methods that are used are suggestible. And so the district court basically found, to the extent that he was just going to be saying, here's some methods and these people aren't credible, that he couldn't do that. But he was going to be allowed to talk about factors that might have an influence on whether an interview was reliable. The other category of prejudice that's mentioned is just things like, if I had more time, I could have reviewed more, I could have had more witnesses, etc. Which is all fine, but the problem is to show prejudice, you have to talk about what the outcome would have been different if you had these things. So, for example, this witness would have come in and rebutted this person, or so on. And so, a general allegation of prejudice is insufficient for him to meet that prong. And even though this is a multi-factor test about continuances, if the defendant can't show prejudice, that's the end of it, and the court has to affirm with no abuse of discretion by the district court. That's all I have on the continuance issue and access. Does the court have any questions about shackling or the iPod? My understanding of shackling is that it was done in such a way that the jury did not have any opportunity to see the shackles. He wasn't shackled from the waist up or have a belly shackle or anything like that. That's correct, Your Honor. He had leg restraints, so at the ankles. He had a curtain. He had a curtain. And then the jury was taken out before he was, so that they didn't see him walk out. Exactly. So the court adopted some pretty detailed methods about the movement of everyone in the courtroom that would make it so the jury wouldn't be able to see him. And there's no evidence that the jury did see him. So the court did a lot to try to maintain the decorum of the courtroom. And if anything, it was Mr. Abrams who was not maintaining that because he was acting out during trial. He was getting admonished constantly. He was eventually held in contempt of court. So there's no evidence of prejudices to the shackling. And so I think that the district court did everything correctly there as well. Unless the court has any more questions. I'm sorry? It was a difficult trial. It was a very difficult trial, Your Honor. And we'll submit on the briefs on the other arguments. Thank you. Thank you. All right. You have a little over two minutes, I think, for rebuttal. Thank you, Your Honor. And I will concur that it was a difficult trial. And I also want to point right out front, I was not the standby counsel. So I have read through the eight days of testimony and preparation for the appearance today and the appeal. But I want to point out one issue that I contradict with the U.S. Attorney's Office, and that is the issue of what the court ruled on with regard to that test, the preponderance test. And I'm looking directly at the transcript that the court this is the court's transcript and it's based on 1073. And I think it's important and I don't want to chastise anybody, but this is my reading of what the court said. This is the court rendition. The defendant also suggests that the absence of written documentation of alleged prior sexual assault shows that  the standard is whether the court is able to make a preliminary finding that the jury could reasonably find by preponderance of evidence that the prior sexual assault occurred. And based on the proffer by the government via the statements attached as Exhibits 1 and 8 to the government motion that's Document 48, I find that the jury could reasonably find by preponderance of the evidence that the prior sexual act occurred. That is only, the proffer was only those 302s. That was Exhibit 48. In other words, though the government brought forth a motion to allow evidence in under 413, the actual evidence was just those two, those 302s. Are you disputing counsel's statement that the motion itself contained a proffer of what the witness would testify to? I mean, that's what I'm reading here, Your Honor. I was not there present, but that's what the court says, is that looking at the Exhibit 48, which is those 302s. I mean, yeah. I haven't looked at that motion. I will, but I was just asking you. You presumably have looked at it. Do you disagree with her characterization? I do, and that's my reading of it. That's why I point out to the exact bait stamp number so that the court wants to go back and look at it. They can. The motion is there. The court's ruling is there. But my reading is that it was strictly the 302s, and that was my counsel made a representation. Of course, I wasn't there, but counsel made the representation that the judge indicated that she was also taking into consideration the other two incidents and what else was going on. You're disputing that? I'm reading it straight from the record, Your Honor. Okay. Well, I think she pointed to another part of the record. That's the exhibit that we talked about. I wish I only wish, as a district judge, I always said what I meant. But I'll tell you it isn't always the case. You know, I understand reason why it's different. I realize that different people could disagree, and I was not there, but this is important enough to me that, you know, when I first appeared before this court, I said that what violated 413 and 403 specifically that the court ruled inappropriately, and that is my belief that was based solely on those 302s, which this court has found is very ambiguous and didn't give any notice whatsoever. And the court also pointed out the issue that my client should have some awareness of what's coming in. The court reversed their opinion, and again, it was a day six. All of a sudden, he finds out that his ex-wives are coming in, and he doesn't have a clue what they're going to say other than what a page and a half of a 302 said, and it's very ambiguous. And then they come in and... Yeah. He had the motion. That's why I like to look at it myself. But assuming that it contains a more detailed proffer of what the ex-wives would say, I don't know how he would have been prejudiced at that point. Well, it is argument from the 302s is my version. I don't think there's any additional information other than the 302s and the U.S. Attorney's take on it. I think it's their argument from the 302. But again, I don't want to stand here and say that's certainly the way it is, but that's the way I see it. So I thought that was important to bring to the court. Yeah. The other issue is the continuance. You know, the continuance. I think that the timeline is November 16th, 2015, when he became the pastor of Frederick Campus and was going to be the pastor for the rest of his life. Was February 16th? Actually, it's November 9th to February 16th. So we're talking three or four months. He'd asked for a continuance. His standby attorney constantly said that he was unprepared. And part of the problem was the court directed that the investigator and the discovery had to go through the standby attorney. And the standby attorney, after he was appointed, didn't even get in to see him until after three weeks had lapsed. So in my reply, I point out how much of that time period was actually available to my client in order to get information and prepare for the trial. When the standby attorney didn't even get to see him until three weeks, that the investigator didn't even get to see him until much later after that, and then when he was finally allowed to make phone calls, it was a very restricted time. You actually are over your rebuttal time. Thank you, counsel, for your argument. I appreciate it. The case just argued is submitted.
judges: Schroeder, Watford, Ezra